**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                    No. CR 11-0288 JB

JUAN RODRIGUEZ,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

     **THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed September 27, 2011 (Doc. 24)("Sentencing Memorandum"). The Court held a sentencing hearing on October 5, 2011. The primary issues are: (i) whether the Court should sentence Defendant Juan Rodriguez at the low end of the advisory guideline range; (ii) whether the Court should impose a fine on Rodriguez; (iii) whether the Court should impose a term of supervised release as part of Rodriguez' sentence; and (iv) whether the Court can direct the Bureau of Prisons ("BOP") on how to calculate the amount of time Rodriguez has already served in state custody. The Court will sentence Rodriguez at the low end of the advisory guideline range. The Court will not impose a fine on Rodriguez, as he does not have the financial resources to afford a fine, but will require him to pay the $100.00 mandatory special assessment. The Court will not impose a term of supervised release as part of Rodriguez' sentence, as the Court believes that imposing additional supervised release on Rodriguez would cause more harm than benefit in terms of his rehabilitation. The Court has no authority to tell the Bureau of Prisons ("BOP") how to calculate Rodriguez' credit for the time he served in state custody, but will make certain that the cover page to the PSR accurately reflects the time he has served so as to facilitate the BOP's accurate calculation of time served.

## FACTUAL BACKGROUND

On January 20, 2007, Rodriguez was charged in the United States District Court for the Western District of Texas with importation of a quantity of marijuana in violation of 21 U.S.C. §§ 952 and 960.  See Presentence Investigation Report ¶ 8, at 4, disclosed September 16, 2011 ("PSR").  On July 19, 2007, Rodriguez received a sentence of 16 months and a term of 3-years supervised release for these charges.  See PSR ¶ 8, at 4.  On March 28, 2008, Rodriguez commenced his term of supervised release in the District of New Mexico.  See PSR ¶ 8, at 4.  On October 3, 2008, the Western District of Texas transferred jurisdiction over his criminal case, docket number EP-07-CR-0352KC(1), to the District of New Mexico.  See PSR ¶ 8, at 4.

On March 3, 2009, Rodriguez' term of supervised release was revoked, and he was sentenced to seven-days custody followed by 2-years supervised release.  See PSR ¶ 9, at 4.  This 2-year term of supervised release began on March 3, 2009.  See PSR ¶ 9, at 4.  On April 15, 2010, Rodriguez' 2-year term of supervised release was revoked, and he received a sentence of 10-months imprisonment.  See PSR ¶ 9, at 4.  On December 1, 2010, Rodriguez was released on furlough status from the Federal Correctional Center La Tuna and ordered to report to Dismas Charities Halfway House in Albuquerque, New Mexico by 3:00 p.m. to serve the remainder of his sentence.  See PSR ¶ 9, at 4.  Rodriguez failed to report to Dismas Charities and made no attempt to contact the facility.  See PSR ¶ 9, at 4.  On December 3, 2010, officials were not able to locate Rodriguez after contacting his family, local law enforcement, and local hospitals.  See PSR ¶ 9, at 4.  A warrant was then issued for his arrest on December 3, 2010.  See PSR ¶ 10, at 4.

On May 16, 2011, Rodriguez was arrested by the Albuquerque Police Department on a charge of concealing identity.  See PSR ¶ 11, at 4.  On June 28, 2011, this charge was dismissed, and Rodriguez entered the United States Marshal's Service's custody.  See PSR ¶ 11, at 4.  On June 29,

2011, Rodriguez appeared in the District of New Mexico pursuant to an Indictment, filed February 10, 2011 (Doc. 3).

In 1991, Rodriguez received six-months probation pursuant to a consent decree for a state driving while intoxicated charge.  See PSR ¶ 25, at 6.  In 1993 and 1994, Rodriguez plead guilty to two separate state misdemeanor charges of concealing identity.  See PSR ¶¶ 26-27, at 7.  In 1996, Rodriguez pled guilty to a state felony charge of trafficking a controlled substance to wit: cocaine.  See PSR ¶ 28, at 7.  In 1997, Rodriguez pled guilty to a misdemeanor charge of false reporting.  See PSR ¶ 29, at 8.  In 1999, prosecutors dismissed a state third-degree felony assault charge against Rodriguez.  See PSR ¶ 37, at 11.  On December 21, 2009, prosecutors dismissed a state felony larceny charge against Rodriguez.  See PSR ¶ 39, at 11.  On March 14, 2010, Rodriguez pled guilty to state misdemeanor charges of concealing identity and shoplifting.  See PSR ¶ 31, at 9.

## PROCEDURAL BACKGROUND

Rodriguez, pursuant to a Plea Agreement, filed August 8, 2011 (Doc. 20), pled guilty to Count 1 of the Indictment charging him with a violation of 18 U.S.C. §§ 751(a) and 4082(a), that being escape.  In the Plea Agreement, Plaintiff United States of America agreed to recommend a sentence at the low end of the sentencing guideline range.  See Plea Agreement ¶ 9, at 5.  The parties agreed to a 2-level reduction under U.S.S.G. § 3E1.1 "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct."  Plea Agreement ¶ 9, at 4.  Other than the stipulations in the Plea Agreement, the parties agreed to "reserve their rights to assert any position or argument with respect to the sentence to be imposed."  Plea Agreement ¶ 9, at 6.

The United States Probation Office ("USPO") disclosed a PSR for Rodriguez on September 16, 2011.  In the PSR, the USPO calculates Rodriguez's total offense level to be 7.  See PSR ¶ 24, at 6.  The PSR calculates a base offense level of 13 under U.S.S.G. § 2P1.1(a)(1).  See PSR ¶ 17,

at 5.  The PSR includes a 4-level reduction under U.S.S.G. § 2P1.1(b)(3).  See PSR ¶ 18, at 5-6.  The PSR includes a 2-level reduction under U.S.S.G. § 3E1.1 based on Rodriguez's acceptance of responsibility.  PSR ¶ 23, at 6.  The PSR lists his criminal history category as III, based on 6 criminal history points.  See PSR ¶ 33, at 10.  The PSR calculates that an offense level of 7 and a criminal history category of III results in a guideline imprisonment range of 4 to 10 months.  See PSR ¶ 66, at 17.  The USPO notes that the guideline range for a fine in this case is $500.00 to $5,000.00 pursuant to U.S.S.G. § 5E1.2(c)(3).  The USPO concludes that Rodriguez does not appear able to pay a fine.  See PSR ¶ 64, at 16.  On September 30, 2011, the USPO disclosed an Addendum to the PSR to address the written statement Rodriguez executed on September 29, 2011 indicating that he accepted responsibility for the offense.  There being no disputes about the PSR's factual findings, the Court adopts them as its own.

On September 27, 2011, Rodriguez filed his Sentencing Memorandum.  He requests that the Court impose: (i) a sentence of imprisonment at the low end of the sentencing guidelines range; (ii) no fine; and (iii) no term of supervised release.  See Sentencing Memorandum at 1.  Rodriguez notes that he has no objection to the USPO's calculation of his guideline sentencing range.  See Sentencing Memorandum at 1-2.  He contends that the time he was in the state officials' custody from May 16, 201 to June 28, 2011 should count toward his current sentence pursuant to 18 U.S.C. § 3585(b).  See Sentencing Memorandum at 2.  He requests that the Court take notice of the USPO's conclusion "that he does not and will not have the ability or resources to pay a fine, and that no fine [should] be imposed."  Sentencing Memorandum at 3.  Rodriguez asserts that he has a long-term common-law relationship with someone and has three children who are fifteen, eleven, and six-years old.  See Sentencing Memorandum at 3.  He notes that the family has faced financial difficulties arising out of his incarceration.  See Sentencing Memorandum at 3.  Rodriguez contends that he has

-4-

significant employment history, and has a wide range of "skills in construction and renovation work such as heating and cooling systems, plumbing, electrical, painting, roofing and landscaping." Sentencing Memorandum at 3 (citing PSR ¶ 54, at 15).  He notes that his most recent employer describes him as a good employee and states that it will have a job for him when he is released from incarceration.  See Sentencing Memorandum at 3-4 (citing PSR ¶ 57, at 15).  He contends that he has worked continuously in this industry since 2000, except for a period when he was incarcerated in 2007.  See Sentencing Memorandum at 4 (citing PSR ¶¶ 58-61, at 16).  Rodriguez concedes that he violated his supervised release and faces a sentence as a result of that violation.  See Sentencing Memorandum at 4.  He notes that the current offense arises out of a failure to report to Dismas Charities as opposed to escaping from custody in a more dramatic manner.  See Sentencing Memorandum at 4.  Rodriguez emphasizes that the United States has agreed to a sentence at the bottom of the guideline range.  Rodriguez also contends that the Court should not impose a term of supervised release, as the respective statute of conviction, 18 U.S.C. § 3583(a), does not require imposition of a term of supervised release.  See Sentencing Memorandum at 4-5.

On October 4, 2011, the United States filed its United States' Response to Defendant's Sentencing Memorandum.  See Doc. 25 ("Response").  The United States concedes that Rodriguez is entitled to receive credit for the time he spent in state custody, but contends that Congress entrusted the respective executive agencies with the role of computing that credit.  See Response at 1-2.  The United States asserts that it will defer to the Court regarding the propriety of imposing a fine in this case.  See Response at 2.  The United States agrees with Rodriguez that a sentence at the low end of the guideline range is appropriate.  See Response at 2.  The United States notes that the Court may impose a term of supervised release of not more than three years.  See Response at 2. The United States asserts that it will defer to the Court regarding the propriety of imposing a term

of supervised release in this case.  See Response at 2-3.

At the sentencing hearing on October 5, 2011, Rodriguez emphasized that he has a solid work history, a supportive family, and a family that needs his financial support.  See Transcript of Hearing at 3:21-24 (taken December 9, 2011)(Allen)("Tr.").[1]  He noted that, following his incarceration, he has a job waiting for him with a former employer.  See Tr. at 3:24-4:2 (Allen).  He reiterated his request that the Court not impose a term of supervised release.  See Tr. at 4:6-12 (Allen).  Rodriguez stated that, because he travels so much as part of his work, complying with the terms of supervised release can sometimes be difficult for him, including making reports to his supervisor.  See Tr. at 5:9-6:21 (Rodriguez).  He also stated that the restrictions that come with supervised release make it very difficult to visit his mother in Mexico.  See Tr. at 5:22-6:8 (Rodriguez, Court).  The United States asserted that it would defer to the Court on the imposition of supervised release, but noted that Rodriguez might benefit from some supervision.  See Tr. at 7:2-12 (Henderson).

## RELEVANT LAW REGARDING SUPERVISED RELEASE

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" 18 U.S.C. § 3583(a).  When a defendant is on supervised release, he is legally bound to abide by certain conditions of his release.  See 18 U.S.C. § 3583(d).  A court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release . . . without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583.  In other words, there is a period of time after release during which, if the defendant does not behave properly, his term of imprisonment will be extended.  See United States v. Vigil, No. 05-2051, 2010 WL 2301708, at *5 (D.N.M. May 4, 2010)(Browning, J.).

The conditions a defendant must comply with during supervised release are specified in 18 U.S.C. § 3583.  The United States Code in other locations designates conduct that, if committed by a defendant on supervised release, can result in a revocation of supervised release.  The express terms found in section 3583 include that the defendant not commit another Federal, State, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample from the defendant, among others. See 18 U.S.C. § 3583(d).  Among those conditions not listed in section 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed. See 18 U.S.C. § 3613A ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").

## LAW REGARDING 18 U.S.C. § 3585(b)(2)

18 U.S.C. § 3585(b)(2) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2).  "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing.  Rather, the authority resides with the

Attorney General, as exercised by the federal Bureau of Prisons."  United States v. Brown, 212 F.App'x 747, 755 (10th Cir. 2007)(unpublished)(citation omitted)(citing United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994)).  "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing.  As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence."  United States v. Luna-Mora, 180 F.App'x 847, 849 (11th Cir. 2006)(unpublished)(citations omitted)(internal quotation marks omitted).

The Supreme Court of the United States held in United States v. Wilson, 503 U.S. 329 (1992), that § 3585(b) does not authorize a district court to compute a sentence credit at sentencing for time served in pretrial detention.  See 503 U.S. at 331-32.  Rather, the Attorney General, through the BOP, must make credit awards after sentencing.  "In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur after the defendant begins his sentence.  A district court, therefore, cannot apply § 3585(b) at sentencing." United States v. Jenkins, 38 F.3d at 1144 (alterations omitted)(citations omitted)(internal quotation marks omitted).

## ANALYSIS

The Court will sentence Rodriguez at the low end of the advisory guideline range.  The Court will not impose a fine on Rodriguez, as he does not have the financial resources to afford a fine, but will require him to pay the $100.00 mandatory special assessment.  The Court will not impose a term of supervised release on Rodriguez' sentence, as the Court believes that imposing additional supervised release on Rodriguez would cause more harm than benefit in terms of his rehabilitation. The Court has no authority to tell the BOP how to calculate Rodriguez' credit for the time he served

in state custody, but will make certain that the cover page to the PSR accurately reflects the time he has served so as to facilitate the BOP's accurate calculation of time served.

## I.   THE COURT WILL SENTENCE RODRIGUEZ TO A SENTENCE AT THE LOW END OF THE GUIDELINE RANGE.

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment at the low end of the advisory guideline range is appropriate for Rodriguez' offense. The Court agrees with the parties that a sentence of 4 months is sufficient to reflect the seriousness of this offense. The Court has examined Rodriguez' criminal history. While the Court is concerned about prior DWI offenses he had in the past and his arrest for assault, he does not appear to have any significant history of violent crimes. The only violent crime with which Rodriguez was charged, assault, was dismissed. The assault charge occurred in 1999. Rodriguez is now thirty-seven years old and has a lower risk of recidivism. Additionally, Rodriguez has a steady employment history, unlike many defendants who come before the Court. His family is currently suffering from financial difficulties without Rodriguez' additional income to support them. Additionally, Rodriguez' crime is less serious in comparison to many of the crimes the Court sees, which lessens the need for a heavy sentence to promote deterrence to the public at large. While Rodriguez violated the terms of his supervised release by not reporting to his supervisor, this crime is not as grave as escaping from prison. Thus, there does not appear to be a significant need to specifically emphasize deterrence to Rodriguez or to emphasize the factor of protecting the public. The Court notes that one of Rodriguez' former employers considers him a good enough employee to keep a job open for him once he is released from incarceration.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Rodriguez to 4-months imprisonment.

## II.     THE COURT WILL NOT IMPOSE A FINE ON RODRIGUEZ, BUT WILL IMPOSE THE MANDATORY SPECIAL ASSESSMENT OF $100.00.

The Court will not impose a fine on Rodriguez, but will impose the mandatory special assessment of $100.00.  The Court has considered Rodriguez' financial circumstances in assessing whether it should impose a fine on him.  The PSR indicates that he reported no assets or liabilities. See PSR ¶ 63, at 16.  Rodriguez has indicated that he has had difficulty providing for his family financially in part because of his incarceration.  See PSR ¶ 63, at 16.  His wife is currently having to support their three children.  See PSR ¶ 63, at 16.  His wife has indicated that she has been unable to pay bills as they come due and has trouble keeping up with other expenses.  See PSR ¶ 63, at 16.

She had to sell the family vehicle to pay expenses, and the family now relies on public transportation.  See PSR ¶ 63, at 16.  The Court concludes that it would be inappropriate to impose an additional fine on Rodriguez, as his financial circumstances do not indicate that he or his family could afford the fine.  The USPO similarly concluded that Rodriguez does not appear to have the ability to pay a fine.  See PSR ¶ 64, at 16.

## III.   THE COURT WILL NOT IMPOSE A TERM OF SUPERVISED RELEASE ON RODRIGUEZ' SENTENCE.

"The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" unless such a term is required by statute.  18 U.S.C. § 3583(a).  Rodriguez has not pled guilty to an offense that requires a term of supervised release.  See 18 U.S.C. §§ 751, 4082.  Because the offense is punishable by up to five years, it is a Class D felony.  See 18 U.S.C. § 3559(a).  The sentencing guidelines recommend "[a]t least one year but not more than three years for a defendant convicted of a Class C or D felony."  U.S.S.G. § 5D1.2(a)(2) (citing 18 U.S.C. § 3583(b)(2)).  Under the guidelines, a term of supervised release is optional if the a court imposes a sentence of less than one year.  See U.S.S.G. § 5D1.1(a)(2) ("The court shall order a term of supervised release to follow imprisonment . . . when a sentence of imprisonment of more than one year is imposed.").  Thus, a term of supervised release is optional under the guidelines, because the Court is imposing a sentence of 4-months imprisonment.  When determining whether to impose a term of supervised release, a Court must consider the factors set forth in 18 U.S.C. § 3553(a), much like in determining what sentence to give a defendant.

As the Court considers the same factors under 18 U.S.C. § 3553(a) in determining whether to impose a term of supervised release as it does when considering the appropriate sentence for a

defendant, the Court's conclusions regarding the appropriate sentence for Rodriguez are also applicable here. Beyond those considerations, the Court also considers that Rodriguez has already spent a large amount of time on supervised release for the previous convictions he received in the Western District of Texas. The Court believes that Rodriguez might receive some benefits from supervised release, such as dealing with any drug problems he may have. Taking into account all of his circumstances, however, the Court believes that imposing a term of supervised release will do more harm than good for Rodriguez. It is not entirely clear why Rodriguez did not report to Dismas Charities as part of his supervised release. Rodriguez stated at the hearing that it had to do with problems created by his travel for work and some misunderstanding about his obligations under supervised release. See Tr. at 5:9-6:2 (Rodriguez). The USPO and the United States have not provided many details regarding his failure to report that would make that conduct appear particularly culpable. The Court has some concerns that the nature of Rodriguez' profession, construction, might make it difficult for him to comply with the terms of his supervised release, because the job requires that he travel. While many defendants may benefit from a term of supervised release even though such a term is not mandatory for a given offense, a court should take into account the particular circumstances of each case. The Court does not believe a term of supervised release is appropriate under the circumstances of this case. The Court is concerned it will interfere with his ability to work, which the Court believes is an important part of his rehabilitation at this time. Additionally, Rodriguez has already received fairly severe punishment for the crime he committed in the Western District of Texas.

IV.    **THE COURT HAS NO AUTHORITY TO TELL THE BOP HOW TO CALCULATE RODRIGUEZ' CREDIT FOR THE TIME HE HAS SERVED IN STATE CUSTODY, BUT WILL MAKE SURE THAT THE COVER PAGE TO THE PSR ACCURATELY REFLECTS THE TIME HE HAS SERVED.**

18 U.S.C. § 3585(b)(2) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2).  "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing.  Rather, the authority resides with the Attorney General, as exercised by the federal Bureau of Prisons."  United States v. Brown, 212 F.App'x at 755 (citation omitted).  "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing.  As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence."  United States v. Luna-Mora, 180 F.App'x at 849 (citations omitted)(internal quotation marks omitted).

The Supreme Court held in United States v. Wilson that § 3585(b) does not authorize a district court to compute a sentence credit at sentencing for time served in pretrial detention.  See 503 U.S. at 331-32.  Rather, the Attorney General, through the BOP, must make credit awards after sentencing.  "In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur after the defendant begins his sentence.  A district court, therefore, cannot apply § 3585(b) at sentencing."  United States v. Jenkins, 38 F.3d at 1144 (alterations omitted)(citations omitted)(internal quotation marks omitted).

Consequently, the Court has no authority to tell the BOP how to calculate Rodriguez' credit

for the time he served in state custody.  The Court will make sure that the cover page to the PSR accurately reflects the time he has served.  The cover sheet to the PSR states that Rodriguez was in state custody from May 16, 2011 through June 28, 2011, which is the period of time Rodriguez states he should receive credit for in his Sentencing Memorandum.  Thus, the Court concludes that the PSR accurately reflects this information, which will decrease the chances of any incorrect computation of his credit for time served.

　　　**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum, filed September 27, 2011 (Doc. 24), are granted in part and denied in part.  The Court will sentence Defendant Juan Rodriguez at the low end of the advisory guideline range to 4-months imprisonment. The Court will not impose a fine on Rodriguez, but will require him to pay the $100.00 mandatory special assessment.  The Court will not impose a term of supervised release on Rodriguez' sentence. The Court has no authority to tell the Bureau of Prisons how to calculate Rodriguez' credit for the time he served in state custody so as to facilitate the BOP's accurate calculation of time served.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
　United States Attorney
Shammara Henderson
　Assistant United States Attorney
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

Darrell M. Allen
Albuquerque, New Mexico

　　　*Attorney for the Defendant*

-14-